**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH MOLITOR,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:20-1266** |
| **v.** | : | |
| | | **(JUDGE MANNION)** |
| **CITY OF SCRANTON,** | : | |
| **PENNSYLVANIA STATE POLICE,** | | |
| **JASON GULA, DAVID HEINKE,** | : | |
| **LAUREN FETCH, LAUREN FORCE** | | |
| | : | |
| **Defendants** | | |

**MEMORANDUM**

On July 23, 2020, Plaintiff Joseph Molitor ("Plaintiff" or "Molitor") filed a complaint in this District, (Doc. 1), asserting various claims against defendants City of Scranton, Officer Jason Gula of the City of Scranton Police Department, Pennsylvania State Police, Inspector David Heinke of the U.S. Postal Inspection Service, Inspector Lauren Fetch of the U.S. Postal Inspection Service, and John Doe. In an amended complaint filed on July 29, 2020, (Doc. 4), Plaintiff added as a defendant forensic scientist Lauren Force of the Pennsylvania State Police (collectively, with the other named defendants, "Defendants").

Plaintiff raises claims in his amended complaint against select Defendants for false arrest (Count I), malicious prosecution (Count II),

conspiracy to commit false arrest, malicious prosecution, and unlawful seizure (Count III), unlawful seizure (Count IV), and <u>Monell</u> liability (Counts V, VIII) under <u>42 U.S.C. §1983</u>, and claims for false arrest (Count VI), malicious prosecution (Count VII), fraud (Count IX), and civil conspiracy (Count X) under state law.

Pending before the Court are two separate motions filed on behalf of defendants City of Scranton and Jason Gula, (the "City Defendants"), (Doc. 10), and defendants Pennsylvania State Police and Lauren Force, (the "State Police Defendants"), (Doc. 16), to dismiss Plaintiff's amended complaint for failure to state claims upon which relief can be granted. Plaintiff raises ten claims against these four defendants, including Counts I, II, and III against defendants Gula and Force, Counts IV, VI, and VII against defendant Gula, Counts IX and X against defendant Force, Count V against defendant City of Scranton, and Count VIII against defendant Pennsylvania State Police.

Viewing the evidence in a light most favorable to the non-moving party, the Court will: **GRANT** the City Defendants' motion to dismiss Counts I, II, III, IV, VI, and VII as to defendant Gula; **GRANT** the City Defendants' motion to dismiss Count V as to defendant City of Scranton; **GRANT** the State Police Defendants' motion to dismiss Counts I, II, III, IX, and X as to defendant Force; and **GRANT** the State Police Defendants' motion to dismiss Count VIII as to defendant Pennsylvania State Police.[1]

---

[1] In his brief replying to the State Police Defendants' motion to dismiss, Plaintiff "agrees to dismiss counts IX and X against Defendant Force as she

## I.      BACKGROUND

Marijuana is a psychoactive drug derived from the cannabis plant and has historically been utilized for both recreational and medical purposes. Hemp, in comparison, though derived from the same species of cannabis plant as marijuana and similarly containing the psychoactive component tetrahydrocannabinol ("THC"), represents a distinct strain of the plant with a unique chemical composition. Cannabidiol ("CBD") is a compound found within cannabis plants and is often extracted from the plants and infused with numerous benign products for consumption or therapeutic uses. The differentiation between marijuana and hemp, as well as the different forms of CBD, though potentially similar in either appearance or smell based on their state, is most often dependent on the level of THC within the substances.

Restrictions concerning marijuana and other substances with varying degrees of THC have shifted and continue to shift as more jurisdictions decriminalize the possession and distribution of such products. Though marijuana is considered a controlled substance in many jurisdictions, including on the federal and Pennsylvania state levels, other substances with lower THC levels, such as hemp and hemp-derived CBD, are legal to possess in most instances. In Pennsylvania, hemp and hemp-derived CBD,

---

is entitled to sovereign immunity." The Court will thus proceed without providing analysis as to these two claims.

which maintain a TCH concentration of less than 0.3 percent, are legal to possess.

Plaintiff Joseph Molitor is a resident of Pennsylvania and owner of the CBD Shop of Northeast Pennsylvania, a "lawful business owned and operated by Plaintiff under Pennsylvania and Federal Law." In August 2018, Plaintiff attempted to mail several packages from the United States Post Office in the Steamtown Mall in Scranton, Pennsylvania. Plaintiff alleges that upon inspection of Plaintiff's packages, defendant Fetch, an inspector employed by the U.S. Postal Service, detected a suspicious odor permeating from these packages, and in consideration of this odor, on or about August 7, 2018, defendants Fetch and Heinke "seized the packages and prevented them from being mailed."

On August 28, 2018, defendant Fetch obtained a search warrant for Plaintiff's packages and several days later, defendant Heinke allegedly executed the search warrant by opening Plaintiff's packages, within which he found 11.3 grams of a "green, leafy substance." Plaintiff further claims that during this search, along with the green, leafy substance, defendant Heinke also found a certificate of analysis from a licensed CBD and hemp testing center stating that the packages did not contain marijuana but CBD or hemp based on the levels of THC. Nevertheless, defendants Heinke and Fetch "referred this matter to Defendant Gula for prosecution."

Plaintiff alleges that upon receipt of the substance from defendants Heinke and Fetch, defendant Gula, with defendants Heinke and Fetch, sent

the substance to a laboratory operated by defendant Pennsylvania State Police. According to Plaintiff, defendant Force, a forensic scientist employed by the State Police, conducted testing on the substance and reported to defendants Heinke, Fetch, and Gula that the substance "contained marijuana" even though "[d]efendant Lauren Force knew that [her] report was materially false." Based on the findings of defendant Force's report, defendant Gula filed charges on June 5, 2019, against Plaintiff for felony possession of marijuana and precipitated the arrest of Plaintiff. On February 13, 2020, however, the Lackawanna County District Attorney's Office filed a nolle prosequi, dismissing the pending criminal charges against Plaintiff. Thereafter, Plaintiff filed his complaint against the Defendants arguing that the initial search and seizure of his packages were unconstitutional, while the Defendants lacked probable cause to effectuate his arrest as the substance had legal levels of THC.

On October 30, 2020, the City Defendants filed a motion to dismiss Plaintiff's Section 1983 and state-law claims. On December 28, 2020, the State Police Defendants filed a similar motion to dismiss Plaintiff's claims. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1343, and it can exercise pendent jurisdiction over the state-law claims under 28 U.S.C. § 1337. Venue is proper in this district. The Court will thus turn to the merits of Plaintiff's claims.

## II.     STANDARD

The defendants' motions to dismiss are brought pursuant to the Federal Rule of Civil Procedure Rule 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. <u>Fed. R. Civ. P. 12(b)(6)</u>. The moving party bears the burden of showing that no claim has been stated, <u>Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005)</u>, and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," <u>Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)</u> (abrogating "no set of facts" language found in <u>Conley v. Gibson, 355 U.S. 41, 45-46 (1957)</u>). The facts alleged must be sufficient to "raise a right to relief above the speculative level." <u>Twombly, 550 U.S. at 555</u>. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action. Id. at 556. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)</u> (brackets and quotations marks omitted) (quoting <u>Twombly, 550 U.S. at 555</u>).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. <u>Sands v.</u>

McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). The court, however, may not rely on other parts of the record in determining a motion to dismiss. *See* Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).[2]

## III.    DISCUSSION

The Plaintiff raises ten separate causes of action against defendants City of Scranton, Jason Gula, Pennsylvania State Police, and Lauren Force, including: (I) false arrest under §1983 against defendants Gula and Force; (II) malicious prosecution under §1983 against defendants Gula and Force;

---

[2] Generally, courts should grant leave to amend a complaint before dismissing it as merely deficient. *See, e.g.*, Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

(III) conspiracy to commit false arrest, malicious prosecution and unlawful seizure under §1983 against defendants Gula and Force; (IV) unlawful seizure under §1983 against defendants Gula and Force; (V) <u>Monell</u> liability under §1983 against defendant City of Scranton; (VI) common law false arrest against defendant Gula; (VII) common law malicious prosecution against defendant Gula; (VIII) <u>Monell</u> liability under §1983 against defendant Pennsylvania State Police; (IX) common law fraud against defendant Force; and (X) common law civil conspiracy against defendant Force. The Court will analyze these claims in turn.

### A. <u>Jurisdiction</u>

As a preliminary matter, the State Police Defendants argue that this Court does not have jurisdiction as neither the complaint nor the amended complaint were properly served. Pursuant to the Federal Rules of Civil Procedure,

> "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."

<u>Fed. R. Civ. P. § 4</u>. The State Police Defendants argue that "the Court does not have jurisdiction" as the amended complaint, filed on July 29, 2020, was "not received by [State Police Defendants] until December 5, 2020."

In response, Plaintiff claims that he had attempted to serve defendants Pennsylvania State Police and Force on July 31, 2020, and that "[u]pon inquiry, the postal service indicated that the mailing was delivered, but due to technical errors, was not updated in the system and the return green card was not returned." As the Plaintiff did not receive a response to service, he claims to have utilized a private investigator to serve the amended complaint, but these attempts to perfect service were rebuffed by the defendants who allegedly refused to accept service.[3] Based on these efforts, consideration of the worldwide pandemic, and other issues faced by the U.S. Postal Service in the summer of 2020, Plaintiff seems to have made good faith efforts to serve its amended complaint but was stymied by issues outside his control.

---

[3] Plaintiff provided the Court with receipts from the U.S. Postal Service that indicate Plaintiff made efforts to serve the amended complaint in July 2020. (Docs. 22-1, 22-2). Generally, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." In re Burlington Coat Factory, 114 F.3d 1410, 1426 (3d Cir. 1997) (citing Angelastro v. Prudential-Bache Sec. Inc., 764 F.2d 939, 944 (3d Cir. 1983)). Courts, however, may consider any "document integral to or explicitly relied upon in the complaint … without converting motion to dismiss into one for summary judgment." Id. (citation omitted); In re Donald Trump Casino Sec. Litig., 7 F.3d 357, 368 n.9 (3d Cir. 1993) ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."). The Court may thus look to these exhibits in determining jurisdiction.

Though defendants Pennsylvania State Police and Force eventually received copies of the amended complaint, the Court need not require proper service given the foregoing decision on the merits.

B. Claims Under 42 U.S.C. §1983

Plaintiff raises six separate claims under Section 1983. These include claims for false arrest, malicious prosecution, unlawful seizure, Monell liability, and conspiracy to commit false arrest, malicious prosecution, and unlawful seizure. Section 1983 authorizes redress for violations of constitutional rights and provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. §1983. Thus, to establish a violation of Section 1983, a plaintiff must demonstrate that the challenged conduct was committed by a person acting under color of state law and deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. Lake v. Arnold, 112 F.3d 682, 689 (3d Cir. 1997). By its terms, Section 1983 does not create a substantive right, but merely provides a method for vindicating federal rights conferred by the United States Constitution and the federal

statutes that it describes. Baker v. McCollan, 443 U.S. 137 (1979); *see also* Hart v. Tannery, 2011 WL 940311 (E.D. Pa. Mar. 14, 2011).

Plaintiff raises his six claims under Section 1983 against defendants City of Scranton, Gula, Pennsylvania State Police, and Force respectively. The Court will view each of these claims separately for the different defendants.

### a.  False arrest as to defendants Gula and Force

A claim under Section 1983 for false arrest is grounded in the Fourth Amendment guarantee against unreasonable seizures. Garcia v. Cty. of Bucks, 155 F.Supp.2d 259, 265 (E.D. Pa. 2001) (citing Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995)). To maintain a claim for false arrest, a plaintiff must show that he or she was arrested and the arresting officer "lacked probable cause to make the arrest." Id. (citing Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988)). Probable cause exists when the facts and circumstances are "sufficient to justify a prudent officer in believing that the suspect had committed or was committing a crime." Jones v. Middletown Twp., 253 F. App'x 184, 188 (3d Cir. 2007) (citing Gerstein v. Pugh, 420 U.S. 103, 111 (1975)). A court will look to the "totality of the circumstances" and use a "common sense approach" in assessing whether there was or was not probable cause at the time of an individual's arrest. Id. (citing United States v. Glasser, 750 F.2d 1197, 1205 (3d Cir. 1984)). Probable cause is to be determined by the facts and circumstances

within the officer's knowledge at the time of the arrest. <u>Hart, 2011 WL 940311, at *10</u>.[4]

Defendant Gula, as an officer with the Pennsylvania State Police, was sent packages from inspectors employed by the U.S. Postal Service that, upon a warrant-based search, were found to contain 11.3 grams of a "green, leafy substance" with an odor consistent with marijuana. Plaintiff claims that upon receipt of these packages, defendant Gula delivered the substance to defendant Force, a forensic scientist working for the Pennsylvania State Police, who, following testing, concluded in a report to Gula that the substance "contained marijuana." Plaintiff, however, in somewhat contradictory terms, also alleges that Gula "knew that this lab report merely indicated the presence of THC in the substance." Regardless, Plaintiff asserts that upon review of and in reliance on Force's report and certification of the contents of Plaintiff's packages, defendant Gula filed criminal charges against Plaintiff and precipitated his arrest.

---

[4] When a plaintiff is arrested pursuant to a warrant, it is proper for a court to "focus[] its probable cause analysis on whether [the defendant] 'knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for the warrant.'" <u>Wilson v. Russo, 212 F.3d 781, 788 (3d Cir. 2000)</u> (quoting <u>Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997)</u>) (internal quotation marks omitted). The parties, however, do not point to a warrant obtained before Plaintiff was arrested. Therefore, the analysis regarding Plaintiff's arrest will focus solely on the standards set forth in <u>Jones</u> and <u>Groman</u>.

Marijuana is currently illegal to possess or send through the mail under federal and Pennsylvania law. 21 U.S.C. §801, et seq.; 35 P.S. §780-101, et seq. Hemp and hemp-based CBD, like marijuana, were generally considered illegal substances under the federal Controlled Substance Act until passage of the Agriculture Improvement Act of 2018 (the "2018 Farm Bill").[5]  Through the 2018 Farm Bill, the federal government changed the legal status of hemp and removed it from regulation under the federal Controlled Substance Act, ending many restrictions on import or interstate movement of hemp seed, plants, or products. See Agriculture Improvement Act of 2018, Pub. L. No. 115-334, § 12619(a)(B), 132 Stat. 4490, 5018 (2018) (confirming that "the term 'marihuana' does not include … hemp, as defined in section 297A of the Agricultural Marketing Act of 1946").  The 2018 Farm Bill, however, was not passed into law until December 20, 2018, several months after Plaintiff's

---

[5] The Controlled Substances Act of 1970 identified all parts of the cannabis sativa L. plant, including hemp, as Schedule I substances. Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. No. 91-513, §§102(15), 202(c)(c)(10), 84 Stat. 1236, 1244, 1249 (1970). Through the Agricultural Act of 2014, (the "2014 Farm Bill"), Congress created pilot programs to study the growth, cultivation, and marketing of hemp (labeled "industrial hemp") by institutions of higher education or state departments of agriculture. Agriculture Act of 2014, Pub. L. No. 113-79, §7606, 128 Stat. 648, 912-13 (2014). The 2014 Farm Bill defined the term "industrial hemp" as "the plant Cannabis sativa L. and any part of such plant … with a delta-9 [THC] of not more than 0.3 percent on a dry weight basis." 7 U.S.C. §5940(a)(2). This earlier bill, however, did not completely decriminalize the production, distribution, or use of hemp, and did not remove hemp from the list of illegal substances covered by the Controlled Substances Act. Id. at §5940(b).

packages were searched and seized. Id. at 4490. The Pennsylvania Department of Agriculture did not publish regulations allowing for industrial hemp permits to be issued for the commercial growth and processing of hemp and hemp-derived products until January 2019.[6]

Based on the information allegedly presented to defendant Gula prior to Plaintiff's arrest and a "common sense approach" as to its implications, there appears no cognizable basis upon which to contradict a conclusion that there persisted facts "sufficient to justify a prudent officer in believing that the suspect had committed or was committing a crime." Jones, 253 F. App'x at 188 (citing Gerstein, 420 U.S. at 111). Plaintiff's conclusory claim that defendant Gula was made aware that the substance in Plaintiff's packages "contained marijuana" even though he "knew that [Force's] lab report merely indicated the presence of THC" fails to show that he "lacked probable cause to make the arrest." Garcia, 155 F.Supp.2d at 265 (citing Groman, 47 F.3d

---

[6] Plaintiff does not address how or why his possession of hemp or hemp-based CBD products would not be controlled by such regulations, though the Court does recognize that limited exceptions to the possession of certain THC-laden products existed at the time of Plaintiff's arrest. *See supra* n.5 (pilot programs to study the growth, cultivation, and marketing industrial hemp created by the 2014 Farm Bill); *see also* 35 P.S. §10231.101 et seq. (the Pennsylvania Medical Marijuana Act, effective as of May 17, 2016, provided an avenue for patients, caregivers, and organizations to register for the legal production, distribution, research or use of marijuana for medical purposes under state law). Plaintiff, however, relies on C.Y. Wholesale, Inc. v. Holcomb, 965 F.3d 541, 544 (7th Cir. 2020), which clearly states that "under the 2014 [Farm Bill], industrial hemp plants and seeds (as before) could 'not be transported across State lines.'"

at 636). In addition, Plaintiff's argument that a "Certificate of Analysis" included in Plaintiff's packages indicating the substance contained within was "CBD and/or Hemp, not marijuana" would be sufficient to foreclose any further investigation into the substance or reliance on a State Police forensic report is unrealistic. Instead, at the time of Plaintiff's arrest, the presence of THC-laden elements of the cannabis sativa L. plant in Plaintiff's packages constituted reasonable grounds upon which defendant Gula maintained probable cause.[7] *See* United States v. Simmons, 2006 WL 1289356, at *3 (M.D. Pa. May 9, 2006), aff'd, 2007 WL 3122169 (3d Cir. Oct. 26, 2007) (the presence of marijuana, later confirmed by a lab report, provided the arresting officer with the "probable cause needed to arrest the [d]efendant." (citing United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002))).[8]

---

[7] Plaintiff fails to make clear in his complaint what was actually in his packages. Plaintiff asserts in multiple instances that they contained "CBD and/or Hemp," but he does not contest the fact that the substance contained THC. Plaintiff's own indecision as to his own packages seems to call into question what the State Police Defendants and City Defendants should or should not have reasonably known regarding the THC-laden "green, leafy substance" appearing and emitting an odor similar to marijuana.

[8] Even where further investigation by defendant Gula may or may not have unearthed evidence that would exonerate Plaintiff before charges were filed, it cannot be said that defendant Gula was required to take every possible step to disprove the evidence he was provided before proceeding with the filing of charges. *See* Collins v. Jones, 664 F. App'x 247, 249 (3d Cir. 2016) (later lab evidence contradictory to evidentiary basis for probable cause "irrelevant" for determination of probable cause at time of arrest).

In contrast, defendant Force, whom Plaintiff also alleges brought about the Plaintiff's false arrest, was not directly involved in the decision to either charge or arrest Plaintiff. Plaintiff, however, instead argues that a defendant such as Force "need not initiate a prosecution and may be held liable for malicious prosecution if she 'was instrumental in Plaintiff's continued confinement or prosecution.'" (Doc. 22 at 8-9) (citing Pierce v. Gilchrist, 359 F.3d 1279 (10th Cir. 2004)). In this regard, Plaintiff relies on cases from nonprecedential circuits finding constitutional violations against lab technicians that "concealed" evidence or created a "misleading and scientifically inaccurate serology report." Pierce, 359 F.3d at 1292 (citing Jones v. City of Chicago, 856 F.2d 985, 993 (7th Cir. 1988)); Brown v. Miller, 519 F.3d 231, 238 (5th Cir. 2008).

In line with such cases, Plaintiff's false arrest claim against defendant Force is centered around an alleged failure of Force's report to provide a clear numerical determination as to the THC levels of the substance found within Plaintiff's packages. As the State Police Defendants point out, however, the 2018 Farm Bill, which decriminalized hemp on the federal level, was not signed into law until several months after the substance in Plaintiff's packages was tested. Therefore, any differentiation between THC levels in marijuana and hemp at the time Force's report was completed would have been inconsequential for purposes of determining whether a crime was committed. Plaintiff's allegations of false arrest against defendants Gula and Force, therefore, lacks a clear basis and thus will be dismissed.

16

### b. Malicious prosecution as to defendants Gula and Force

To prove a Fourth Amendment malicious prosecution claim, a plaintiff must show: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Curry v. Yachera, 835 F.3d 373, 379 (3d Cir. 2016) (quoting Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007)); Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).

The Plaintiff alleges that the initiation of criminal proceedings by defendant Gula, which included filing charges involving the possession of a controlled substance, was commenced without probable cause and with malice, and resulted in Plaintiff's arrest. Though questions persist as to the degree that Gula was involved in initiating criminal proceedings, Plaintiff, as with his claim for false arrest, has failed to plead facts sufficient to show defendant Gula initiated proceedings without probable cause.[9]

---

[9] While "a grant of *nolle prosequi* can be sufficient to satisfy the favorable termination requirement for malicious prosecution, not all cases where the prosecutor abandons criminal charges are considered to have terminated favorably." Donahue v. Gavin, 280 F.3d 371, 383 (3d Cir. 2002) (quoting Hilfirty v. Shipman, 91 F.3d 573, 579-80 (3d Cir. 1996)). Instead, a decision by the government to file a motion for *nolle prosequi* abandoning criminal charges "signifies termination of charges in favor of the accused only when their final disposition is such as to indicate the innocence of the

Separately, defendant Force asserts that a claim for malicious prosecution cannot be sustained because she "did not prepare the incident report or file the criminal complaint" and was not personally involved in the decision-making process that resulted in Plaintiff being charged. When reviewing the complaint, Plaintiff does not allege that defendant Force was involved in the investigatory or charging processes after she provided her report to defendant Gula. *See* (Doc. 4 at ¶¶ 29-39). Instead, Plaintiff merely asserts that defendant Force conducted laboratory testing on the substance in Plaintiff's packages, authored a report that indicated the substance was marijuana, and provided this report to defendants Heinke, Fetch, "and/or" Gula even though she "knew that this report was materially false."

Though a Plaintiff may plead a plausible claim for malicious prosecution against a lab technician where Plaintiff alleges that the technician "intentionally, or at a minimum, recklessly, [reported] false forensic conclusions to support the prosecution's theory of the case," malice is still required. Siehl v. City of Johnstown, 365 F. Supp. 3d 587, 601-02 (W.D. Pa. 2019). In light of the state of the law in August 2018 and defendant Force's lack of any alleged involvement in the decision to charge the Plaintiff, Plaintiff cannot show that defendant Force acted maliciously by merely

---

accused." Donahue, 280 F.3d 371, at 383 (citation omitted). As the City Defendants and State Police Defendants do not argue that the filing of a *nolle prosequi* as to Plaintiff's criminal charges did not establish Plaintiff's innocence, the Court will assume the criminal proceedings ended in Plaintiff's favor.

authoring a report that failed to provide a numerical THC percentage for Plaintiff's substance when such a distinction was not relevant for the State Police Defendants' investigation. *See also* (Doc. 4 at ¶33) (regardless of the assertions within Force's report, Plaintiff alleges "[d]efendants Gula, Heinke, and Fetch also knew that this lab report merely indicated the presence of THC in the substance, not the actual presence of marijuana," seemingly diminishing any influence drawn from defendant Force's report).

     c. <u>Conspiracy to commit false arrest, malicious prosecution, and unlawful seizure as to defendants Gula and Force</u>

To prove a conspiracy under Section 1983, a plaintiff must demonstrate an agreement of two or more conspirators to deprive the plaintiff of a constitutional right under color of law. *See* <u>Parkway Garage, Inc. v. City of Phila., 5 F.3d 685, 700 (3d Cir. 1993)</u>, abrogated on other grounds; <u>United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392 (3d Cir. 2003)</u>. A plaintiff must "make specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events." <u>Quintal v. Volk, 2000 WL 1367948, at *2 (E.D. Pa. Sept. 21, 2000)</u>; <u>Panayotides v. Rabenold, 35 F.Supp.2d 411, 419 (E.D. Pa. 1999)</u>. It is recognized that a plaintiff is not, however, required to produce direct evidence of a conspiracy.

Though Plaintiff has failed to clearly plead underlying constitutional violations against defendants Gula and Force, he also fails to allege that there was a "combination, agreement, or understanding" between

defendants Gula and Force, or that defendants Gula or Force thus conspired with defendants Heinke and Fetch. In fact, the complaint appears to clearly insulate the various portions of the investigative process between the search and seizure by defendants Heinke and Fetch, the analysis of the substance found in Plaintiff's packages by defendant Force, and the filing of charges by defendant Gula, who seemingly took it upon himself to wait eight months after receiving Force's report to file charges. Nowhere in his complaint does Plaintiff ever indicate that defendants Force and Gula maintained any discussions or communications between each other or with defendants Heinke and Fetch except through the back-and-forth delivery of Plaintiff's packages or Force's forensic report. Without any alleged efforts of employees of the U.S. Postal Service, the City of Scranton, and the Pennsylvania State Police to "plot, plan, or conspire to carry out the alleged chain of events," a conspiracy claim is thus unfounded.

### d. Unlawful seizure as to defendant Gula

The Fourth Amendment protects against "unreasonable searches and seizures" of an individual's person, house, papers, and effects. U.S. Const. Amend. IV. To establish a Fourth Amendment claim, a plaintiff must show that the actions of the defendant: "(1) constituted a 'search' or 'seizure'; and (2) were unreasonable in light of the circumstances." Stasko v. Lebanon Cty. Drug Task Force, 2012 WL 6561726 (M.D. Pa. Dec. 17, 2012) (citations omitted); *see also* Bower v. Cty. of Inyo, 489 U.S. 593, 595 (1989) (a "'[s]eizure' alone is not enough for §1983 liability; the seizure must be

'unreasonable'"). A search occurs when "an expectation of privacy that society is prepared to consider reasonable is infringed," while a seizure of property occurs when there is "some meaningful interference with an individual's possessory interests in that property." U.S. v. Jacobsen, 466 U.S. 109, 113 (1984) (citations omitted).

Defendant Gula does not contend that there was not a seizure of Plaintiff's property, nor that there was not a search. Instead, he argues that there was no constitutional violation as the search and seizure of Plaintiff's packages were reasonable. In this instance, the determination as to whether the search and seizure were reasonable must reflect a balance between the Government's interest in protecting the public and enforcing its laws versus the duration and degree of intrusion into the Plaintiff's privacy.

As a preliminary matter, where the authorities possess "specific and articulable facts" warranting a reasonable belief that a package contains narcotics, the "governmental interest in seizing [it] briefly to pursue further investigation is substantial." United States v. Place, 462 U.S. 696, 703 (1983). It is also well settled that the smell of marijuana alone, if articulable and particularized, may establish probable cause. United States v. Ramos, 443 F.3d 304, 308 (3d Cir. 2006) (citing United States v. Humphries, 372 F.3d 653, 658 (4th Cir. 2004) ("[T]he odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place.");

United States v. Winters, 221 F.3d 1039, 1042 (8th Cir. 2000)).[10] Further, a seizure is typically reasonable when it is carried out with a warrant based on probable cause. Katz v. United States, 389 U.S. 347, 356-357 (1967).

Plaintiff alleges that after defendant Fetch detected an odor coming from Plaintiff's packages believed to be consistent with marijuana, Fetch and defendant Heinke seized the packages and obtained a warrant to conduct the search. For Plaintiff, however, the extended delay of roughly two weeks between the initial suspicion and the issuing of the warrant was an unreasonable delay, whereas "Gula's continuing possession of the property constitute[d] an ongoing [unreasonable] seizure." Though questions regarding the degree of the intrusion of Plaintiff's privacy rights by defendants Heinke and Fetch may require further analysis, the seizure by Gula, a state official who received the packages from Inspectors of an independent federal agency after a warrant-based search, was not unreasonable.

---

[10] Plaintiff's reliance on Commonwealth v. Barr, 240 A.3d 1263 (Pa. Super. Ct. 2020), though highlighting the changing authority provided to government agents to monitor marijuana and hemp in view of the incremental decriminalization of cannabis-based products, is misplaced as the case not only relies on a state-law medical marijuana exception that would not have prevented the initial seizure of Plaintiff's packages by federal officers, but does not present facts sufficient to address the ability of the government to monitor the mail when a suspicious odor may be the only indicator that a criminal act is afoot.

Instead, in consideration of the claims pled by Plaintiff, the only step that Gula could have taken to constitutionally protect the Plaintiff's rights and remain free from personal liability would have been to return these packages to Plaintiff regardless of the information Gula possessed at the time. Such an outcome would have clearly undermined the public's interest and the judicial process. Defendant Gula's "continu[ed] possession" of Plaintiff's property, based on the totality of the circumstances alleged by Plaintiff, was thus reasonable and the City Defendants' motion to dismiss Plaintiff's claim for an unlawful seizure as to defendant Gula will be dismissed.

e. Monell claims against defendant City of Scranton and Pennsylvania State Police

Claims against a municipality under Section 1983 are available only under certain circumstances. In Monell v. Dep't of Soc. Servs. of N.Y.C., the Supreme Court states that "local governing bodies ... can be sued directly under §1983 ... where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. 658, 690 (1978). Thus, a municipality may be held liable under Section 1983 where "the alleged unconstitutional action executes or implements policy or a decision officially adopted or promulgated by those whose acts may fairly be said to represent official policy." Reitz v. Cty. of Bucks, 125 F.3d 139, 144 (3d Cir. 1997) (citing Monell, 436 U.S. 658 at 690-91). The Third Circuit has interpreted this to allow for liability under three circumstances:

> First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, Jett v. Dall. Indep. Sch. Dist., 491 U.S. 701, 737 (1989); second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy, Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986); third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes, City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).

Spiess v. Pocono Mountain Reg'l Police Dep't, 2013 WL 1249007, at *19 (M.D. Pa. Mar. 26, 2013) (quoting McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005)). In essence, a party must show that an unconstitutional policy or custom exists or was created by a decisionmaker possessing final authority. Forrest v. Parry, 930 F.3d 93, 105-06 (3d Cir. 2019) ("[A] plaintiff presenting an unconstitutional policy must point to an official proclamation, policy or edict by a decisionmaker possessing final authority to establish municipal policy on the relevant subject. And, if alleging a custom, the plaintiff must evince a given course of conduct so well-settled and permanent as to virtually constitute law.").

      i.  Monell claim against defendant City of Scranton

"[F]or a municipality to be liable under a municipal policy or custom theory, the plaintiff needs to point to a specific policy or a custom that caused his injury." Jones v. Cty. of York, 2020 WL 3892878, at *4 (M.D. Pa. July 10, 2020). Plaintiff, however, fails to point to a specific policy utilized by defendant City of Scranton. Instead, Plaintiff merely claims that the "City of

24

Scranton routinely utilize[s]" labs operated by defendant Pennsylvania State Police and "regularly arrests individuals for substances containing any THC without testing levels to determine legality."[11] This claim not only fails to meet the requirements in <u>Jones</u>, but also does not take into account the fact that the THC levels separating hemp from marijuana did not mark the border between legality and illegality at the time of Plaintiff's arrest. *See supra* Section III(B)(a) (discussing the impact of the 2018 Farm Bill on the decriminalization of hemp).  As a result, Plaintiff inadequately identified an unconstitutional policy utilized by the City Defendants and his <u>Monell</u> claim against defendant City of Scranton will thus be dismissed.

> ii. <u>Monell</u> claim against defendant Pennsylvania State Police

Plaintiff does, however, attempt to identify a "policy, procedure, practice, and/or custom" of the Pennsylvania State Police that instructs technicians to "only test suspected marijuana for the presence of any THC." Though Plaintiff points to an ambiguous practice that may or may not reflect an "official proclamation, policy or edict by a decisionmaker possessing final authority to establish municipal policy on the relevant subject" as required by *Forrest*, he insufficiently alleges that, at the relevant time, any such policy

---

[11] Plaintiff also claims that "the manner by which Defendant City tests suspected marijuana is to test the substance for the presence of THC" and "determines that the substance contains marijuana" if THC is detected, even though Plaintiff consistently claims throughout his complaint that the City Defendants rely on testing conducted by the State Police Defendants.

would have been unconstitutional. As discussed above, the differentiation between the THC levels of hemp and marijuana at the time of Plaintiff's arrest was not determinative as to the legality of possession. Therefore, regardless of whether the policies of the Pennsylvania State Police instructed their lab technicians to identify substances containing THC as marijuana or provide the numerical value of THC in a substance within their reports, the practices of the State Police Defendants would not have led law enforcement agencies to "arrest[] individuals who possess[ed] Hemp or CBD" without probable cause. Therefore, Plaintiff's <u>Monell</u> claim against defendant Pennsylvania State Police will be dismissed.

### C. Claims Under Pennsylvania State Law

The Plaintiff raised four separate claims under state law through his amended complaint, including claims for false arrest and malicious prosecution against defendant Gula and claims for fraud and civil conspiracy against defendant Force. Plaintiff thereafter agreed to dismiss his claims against defendant Force for fraud and civil conspiracy. Thus, only Plaintiff's state-law claims for false arrest and malicious prosecution as to defendant Gula remain.

Under Pennsylvania law, claims for false arrest and false imprisonment are "essentially the same actions." <u>Pellegrino v. U.S. Transp. Sec. Admin., 855 F.Supp.2d 343, 357 (E.D. Pa. 2012)</u> (internal quotation omitted); <u>Gagliardi v. Lynn, 285 A.2d 109, 111-12 (Pa. 1971)</u>. Though the fundamental

elements for a claim of false arrest and false imprisonment may have slight variations, a plaintiff must prove: "(1) the detention of another person (2) that is unlawful." <u>Braswell v. Wollard, 243 A.3d 973, 979 (Pa. Super. Ct. 2020)</u> (citing <u>Manley v. Fitzgerald, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010)</u>; *see also* <u>Kintzel v. Kleeman, 965 F.Supp.2d 601, 608 (M.D. Pa. 2013)</u>. Detention of an individual by a state officer who did not possess probable cause could be unlawful. *See* <u>Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994)</u>. "An arrest based upon probable cause would be justified, however, regardless of whether the individual arrested was guilty or not." <u>Id.</u> (citing <u>Fagan v. Pittsburgh Terminal Coal Corporation, 149 A. 159 (Pa. 1930)</u>).

In contrast, to prevail on a malicious prosecution claim under Pennsylvania law, a plaintiff must prove that "the defendant (1) instituted proceedings against the plaintiff, (2) without probable cause, (3) with malice, and (4) that the proceedings were terminated in favor of the plaintiff." <u>Corrigan v. Cent. Tax Bureau of Pa., Inc., 828 A.2d 502, 505 (Pa. Commw. Ct. 2003)</u> (citing <u>Turano v. Hunt, 631 A.2d 822, 824 (Pa. Commw. Ct. 1993)</u>). A state-law cause of action for malicious prosecution thus includes the same first four elements as a claim under Section 1983 but does not require showing a deprivation of liberty. *See* <u>Napier v. City of New Castle, 407 F. App'x 578, 583 (3d Cir. 2010)</u> (listing the elements of the Pennsylvania cause of action for malicious prosecution as enumerated in <u>Corrigan</u>). A state malicious prosecution claim also does not require that the plaintiff allege a

violation of the United States Constitution or that the defendant was acting under color of law. *But see* <u>Milbourne v. Baker, 2012 WL 1889148, at *12 (E.D. Pa. May 23, 2012)</u> (although the elements for malicious prosecution under state and federal law appear similar, "except for the requirement of a constitutional violation under §1983," they also "differ in substance").

Defendant Gula does not contest Plaintiff's claim that Plaintiff was detained or that proceedings were initiated against him. As described above, however, defendant Gula possessed probable cause to effectuate an arrest as to Plaintiff. Though the charges against Plaintiff were eventually dropped, it is unquestionable based on the Plaintiff's allegations that defendant Gula's arrest of Plaintiff was reasonably justified. The City Defendants' motion to dismiss Plaintiff's state-law claims for false arrest and malicious prosecution as to defendant Gula will thus be granted.

D. <u>Immunity as to the State Police Defendants and City Defendants</u>

In addition to the State Police Defendants and City Defendants' arguments that Plaintiff failed to sufficiently state claims upon which relief may be granted, they also assert that they are entitled to immunity from suit. For those acting "under cover of law," the doctrine of immunity embodies the "right not to stand trial," <u>In re Montgomery County, 215 F.3d 367, 373 (3d Cir. 2000)</u> (citing <u>Mitchell v. Forsyth, 472 U.S. 511, 525 (1985)</u>), and may be properly raised in a Rule 12(b)(6) motion to dismiss, <u>Kulwicki v. Dawson, 969 F.2d 1454, 1461-62 (3d Cir. 1992)</u>. Immunity not only reflects a defense to liability, but "immunity from suit." <u>Hunter v. Bryant, 502 U.S. 224, 227 (1991)</u>.

Notably, the State Police Defendants and City Defendants argue that they are entitled to qualified immunity, which "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 664 (2012); *see also* Saucier v. Katz, 533 U.S. 194 (2001) (for qualified immunity, courts will determine: (1) whether the plaintiff has shown facts that make out a constitutional rights violation, and if so, (2) whether those rights were "clearly established" at the time of the incident). The State Police Defendants, in addition to their uncontested assertion of sovereign immunity as to Plaintiff's state-law claims against defendant Force, further argue that Eleventh Amendment immunity applies to Plaintiff's Monell claim against defendant Pennsylvania State Police.

Courts may only grant a 12(b)(6) motion to dismiss based on immunity if such immunity "clearly appear on the face of the complaint." Rivera-Guadalupe, 2020 WL 4206209, at *4 (quoting Wilson v. Rackmill, 878 F.2d 772, 776 (3d Cir. 1989)); *see also* Weimer v. Cty. of Fayette, Pennsylvania, 972 F.3d 177, 187 (3d Cir. 2020) (conduct covered by immunity must "'clearly appear on the face of the complaint'" (citing Fogle v. Sokol, 957 F.3d 148, 161 (3d Cir. 2020))). It is, however, "generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." Newland v. Reehorst, 328 F. App'x 788, 791 n.3 (3d Cir. 2009); *but see* Campeggio v.

Upper Pottsgrove Twp., 2014 WL 4435396, at *10 (E.D. Pa. Sept. 8, 2014) (noting that as qualified immunity is an immunity from suit, the Supreme Court has "repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in litigation" (quoting Pearson v. Callahan, 555 U.S. 223, 231-32 (2009))).

Though an analysis as to whether immunity would apply to the State Police Defendants and City Defendants would likely unearth grounds upon which the defendants may find protection from suit, such an inquiry would be unnecessary at this juncture as Plaintiff has otherwise failed to plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 544; see also Donahue v. Gavin, 280 F.3d 371, 378 (3d Cir. 2002) ("courts must 'determine first whether the plaintiff has alleged a deprivation of a constitutional right at all' when a government official raises qualified immunity as a defense to an action under §1983" (quoting Cty. of Sacramento v. Lewis, 523 U.S. 833, 842 n.5 (1998))). This Court will therefore deny the City Defendants and State Police Defendants' motions to dismiss based on immunity in light of the Court's earlier findings.

## IV.  CONCLUSION

For the reasons discussed above, the Court will: **GRANT** the City Defendants' motion to dismiss Counts I, II, III, IV, VI, and VII as to defendant Gula; **GRANT** the City Defendants' motion to dismiss Count V as to defendant City of Scranton; **GRANT** the State Police Defendants' motion to

dismiss Counts I, II, III, IX, and X as to defendant Force; and **GRANT** the State Police Defendants' motion to dismiss Count VIII as to defendant Pennsylvania State Police. A separate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: August 31, 2021**
20-1266-01.wpd